And again, Mr. Green, this is by no means a criticism of you. You stepped up to the plate. You're going to argue the case.  But we're here today because Mr. Pierce asked us to move this case based on a cruise and some other things. And I've been trying to – I went through and looked to see if we have any explanation as to why he's not here today other than it was a busy schedule, effectively. We all have busy schedules. We moved this because of Mr. Pierce's schedule. And for him not to be here today, candidly, he's very disappointed. Nothing on you, but a lot of things had to move because of this. So I would just ask that Mr. Pierce file something with the court by the end of tomorrow explaining why he's not here today. That's right. I think – I don't want to issue OSC. It's just if he files something, we'll kind of take it from there. So make sure he gets that message. Yes, Your Honor. All right. And with that, now we'll start the clock. Your Honor, I just wanted to thank opposing counsel for obviously changing the schedule twice. I know Mr. Pierce had two other conflicts, so I do appreciate that. Very well. All right. So with that, we can start the clock. You may enter your appearance. Good morning, Your Honors. Andrew Green from John Pierce Law, counsel for the plaintiffs' appellants in this matter, Laura Loomer, and Laura Loomer for Congress. Your Honor, this case involves three issues. First, whether the doctrine of res judicata bars the present claims against Twitter and Facebook. Second, if res judicata is not applicable, whether Section 230 of the Communications Decency Act bars the claims against Twitter and Facebook. And third, whether plaintiff's RICO claims have been well pleaded. We contend that justice requires Ms. Loomer be given the opportunity to litigate against the named defendants. This case highlights, in our opinion, the unchecked power of massive corporations who control popular media platforms and weaponize their influence to silence individual users. Res judicata bars parties from relitigating claims that they raised or could have raised in a prior lawsuit between the same parties. That was discussed by the Supreme Court in Hellerstedt in 2016. The court in Hellerstedt emphasized that successive litigation is prohibited of the very same claim. That court cited to the second restatement of judgments to emphasize that new material facts propose a new case and an otherwise similar previous case are distinguishable and do not present the same claim. On page 11 of our reply brief, we state the ultimate conclusion. The claims from this matter and Ms. Loomer's previous matters are very much different. While Ms. Loomer's previous suits focused on her individual self and her individual account and the banning of those accounts and a free speech violation, excuse me, this case deals with her becoming a political candidate and her involvement in Federal election activity, which came after those previous suits. Well, did they come after those judgments became final? You're saying this matter you're on? The conduct on which this suit is based, is it based on conduct that occurred after those suits became final? Because you were saying after they were filed, but I'm not sure that additional conduct or independency of a suit counts to get you out of the rule.  Yes, Your Honor. And I believe two of the four previous matters were voluntarily dismissed. Final judgments were issued. Conduct has been occurring after the final judgments in those four previous matters. The material facts which form the basis for the current matter all occurred between 2020 and 2022. Those same facts give rise to the RICO claim, which are now being pledged. What's the enterprise under RICO for purposes of Boyle? What is the enterprise? This looks like you're trying to claim that the pattern of activity is the enterprise. That's correct, Your Honor. Well, if that's correct, you would lose. So you need to have some enterprise, some structure that is distinct from under Boyle from the pattern of activity. I understand. So on page 30 of our opening brief, we discussed that the enterprise must have a common purpose, a structured organization, and longevity necessary to accomplish the purpose. What's the structure? The structure itself? We have three independent companies. Correct. They're conducting their business, and you think you have alleged it's a discriminatory manner, but what's the enterprise? What's the structure? The structure itself is the collaboration between all the parties, each of them furthering their own economic interests. You know, there are allegations that there were discussions about policy interests and protocols and compliance guidelines that were issued after collaboration of those three parties. Going back to the rest of your comment. Basically, you're arguing that doing business constitutes a RICO enterprise. So not doing business itself, Your Honor. What we're saying is the enterprise existed. It affected interstate commerce, and they all collaborated with one another and engaged in this pattern of racketeering activity. You know, on our second amendment complaint at paragraph 46, we discussed how MetaPlatforms does substantial business with Procter & Gamble and the federal government. They all shared a common goal. We discussed that at paragraph 399. This common goal was all of them making money. We discussed the policy matters that were discussed and collaborated on by all three parties. This is discussed on paragraph 272 of our second amendment complaint. And we further allege wire fraud, extortion, interference with commerce by threats or violence, and other racketeering activity on paragraph 427 of our second amendment complaint. We further alleged that following these public proclamations that policy matters are discussed with advertisers, Facebook, Twitter, and Procter & Gamble acted in concert to censor conservative voices and interfere with the American elections. More along the same line. Do you want to address section 230's applicability? Sorry, Your Honor? Do you want to address section 230's potential applicability? Yes, Your Honor. Your Honor. We begin section 230 discussion on page 26 of our opening brief. And we state that the Communications Decency Act does not extend immunity to website operators when they create or develop the information. This court created the three-pronged test for this immunity and barned it. But I thought the claim is they're excluding information. They're not letting it be posted. They're taking it out. And how is that their first-party speech in a way that would take them out of 230? That's correct, Your Honor. So what we did was in our reply brief we contrasted the matter to other matters that our opposing counsel has cited. We distinguished the federal agency of News LLC versus Facebook. This was also the district court's main supporting citation. Then coming to that blanket conclusion that all Facebook and Twitter were doing in the matter was excluding third-party content, as you just stated, and therefore they're immune. On both page 27 of our opening brief and page 17 of our reply brief, we discussed that this case is contrasted different because in the former matter Facebook was immune just from removing the news agency, but that agency was violating Facebook's terms of service with substantial evidence that that agency itself was tied to a Russian-based Internet research agency whose goal was to interfere with the U.S. presidential election. The present matter is absolutely distinct and different. Elections are adversarial processes. Ms. Loomer's campaign never posed a threat to American democracy. A true democracy guarantees that right to every... Basically you're arguing with content decisions, correct? Say it one more time, Your Honor. You're basically arguing with their content decisions, either to include or exclude content, correct? Correct, Your Honor. So why doesn't the Decency Act cover that immunity? I mean, that's what it's aimed at. Right. So, again, I think a similar case was Dangard, which we discussed on page 27 and 18 in our reply brief, where in Dangard the social media platform was demoting and removing information by third parties. However, immunity did not apply because it was done in an anti-competitive manner. So businesses became victims of the anti-competitive filtering, and thus the Section 230 did not apply. The connection to this matter is clear in our eyes. The defendants in this matter suppressed Ms. Loomer's content, damaging her in an election as a political candidate. Similar to the victims in Dangard, a political candidate was harmed by the suppression and manipulation of speech by the defendants. And Facebook and Twitter's filtration system were both designed to facilitate anti-competitive and unlawful conduct, promoting conspiracy to suppress conservative voices. Just kind of backtracking a little bit to the restricted caught argument, as we covered with Brico and Section 230, we believe the court should follow along the lines of Hellerstedt, which we discussed in our opening brief on page 21. In Hellerstedt, the Supreme Court held that claim preclusion did not bar the plaintiffs from raising a post-enforcement challenge to a Texas law. The court went on to state that when important human issues are at stake, even a slight change of circumstances may afford a sufficient basis for concluding a second action may be brought without violating the doctrine of claim preclusion. In support, the court posed a hypothetical situation, which I think fits nicely to this matter. The court gave a situation where prisoners were incarcerated, and they filed suit against the facility where they were incarcerated after being forced to drink contaminated water. If their suit had been dismissed because the court does not believe that the harm would be severe enough to be unconstitutional, it wouldn't make sense to prevent them from bringing the suit at a later time if time and experience show that the prisoners were actually dying from the contaminated water itself. Ms. Loomer's claims involve important human values, such as the right to participate in the political system without discrimination, based on political ideology. Do you want to save any time for rebuttal? Yes, Your Honor. I would like to reserve the rest of my time for rebuttal. All right. So we'll round up until we give him a minute. Sorry, Your Honor. I was actually looking at the clock, and I didn't check ahead of time. She said it for 7 or 10. That was my apologies. No, I think she said it for 10. Okay. Thank you. You'll have a minute. Thank you. All right. So, Counsel, go ahead and approach. You guys have split it up 7 and 3. So when I preside, you have a hard 7, meaning that don't worry, you're going to get 3. I'm going to cut you off at 7. If you use less than 7, then you get more than 3. Sometimes we have a situation where we split, and the first person goes like 15, and then the other person starts panicking. Don't worry. Hard 7. You may proceed. Understood. Thank you, Your Honor. May it please the Court, Sonal Mehta here for Meda and Mr. Zuckerberg. Your Honors, this is Ms. Loomer's fourth suit challenging a decision by Facebook then, now Meda, to permanently disable her account for violations of the community standards, which she agreed to abide by as a condition for having her account. The district court correctly determined that her claims against Meda, Mr. Zuckerberg, Mr. Dorsey, and X were dismissed under res judicata and correctly dismissed the claims with respect to Procter & Gamble on a failure to plead a RICO enterprise. I want to go quickly through... Is he right that some of the conduct alleged occurred after the judgments in the other cases became final? It is certainly true that there are allegations in the complaint that go to the point after Loomer 1 was dismissed with prejudice. But those allegations have no bearing on the actual complaint here, the actual claim here, which is the disablement of her account, which happened long before the dismissal of Loomer 1. And, in fact, at page 13 of the reply brief, they specifically acknowledge that it is, quote, that multiple suits, that Ms. Loomer's multiple suits arise under the same transactional nucleus of operative facts. So, and it... Does the transactional nucleus of operative facts apply? I mean, that's the Federal restatement standard. Does that apply to the Florida suit, which was a State law case? Your Honor, I think it does, but I almost think it doesn't matter, because even if we're looking at it just in terms of identity of the claims, what they are acknowledging is that the claim that they are pursuing here is based on the disablement of the account. You have continuing conduct. Yes. So you have a neighbor who, you know, has loud noise all the time, and you sue and then you give up and you let the suit be dismissed, you know, with prejudice. But then you decide, you know, this really is driving me crazy. I'm going to sue them again. Is that res judicata? Well, yes. And actually, I want to also go back one. You were talking about the Florida State court case, but Loomer 1 was, of course, a Federal case. That one was a Federal, so that's governed by it. But the normal rule under SEMTEC is that in an adversity case, you apply the preclusion law of the forum, which here would be California, which doesn't follow the restatement. Right. But, Your Honor, I think on your question about the hypothetical, the noisy neighbor, that case, I think the case that's dead on point on this is Monterey Plaza. There is not here some new harm or some new primary right at issue. And I think it's really important to look at what the post-2020 allegations are about. Her account was permanently disabled in 2019 during the first Trump administration for violation of community standards. Her allegations about 2020 to 2022 are about supposed pressure or coercion coordination with the Biden administration about misinformation and COVID vaccine misinformation or COVID vaccine related content. There's no connection between the allegations that she pled with respect to 2020 to 2022 and the decision that was made in 2019 to disable her account permanently. In fact, the Biden administration wasn't even in place when that decision was made. And that's why I think their concession that this is all about the same thing is critical and it's dispositive. And under Monterey Plaza, under this court's ruling in Monterey Plaza, there's no allegation. Just like in that case, there's no allegation here of new harm or new primary rights. It's the same harms from the same primary rights. And in that case, it was the you know, the hotel was saying, well, now there's more. We're having more problems, more of the same problems. That's furtherance of the RICO enterprise. And the court said, no, that's barred by race judicata because of the prior state court lawsuit. Was it that they haven't alleged a causation? You know, because the prior one is a permanent ban and therefore there's no causation between any subsequent. Is that ultimately the defect that traps us in race judicata? No. What I would say, Your Honor, is it's actually the same claim that they're asserting now because it's a RICO claim. So there has to be a pattern in practice. But if someone's kicked off a platform and then they sit with that for a while and then later they come back and say, I'd like to get on and you say no, you know, maybe that's new conduct with new circumstances and you get a fresh lawsuit. Well, Your Honor, in this case, she was permanently disabled from the platform and then sued three different times after that and then dismissed the and the final one was dismissed with prejudice. And now is coming back and saying, well, now I'd like a fourth attempt. So it's not like she was permanently disabled and then waited a little bit of time and then realized that she wanted to file a claim. She filed multiple lawsuits. Some were abandoned. Some were dismissed. And she ultimately decided she'd like to try again, fourth round. That's what race judicata does. And pleading facts or allegations about subsequent conduct that actually don't bear at all on the claim doesn't get you out of race judicata. You can't just throw new facts in and say, I'd like to avoid the race judicata effect of all of the prior litigation efforts that I've made. You have to be able to plead some new claim, some new harm, some new primary right under Monterey Plaza, and that's what's missing here. I know I only have a minute and 30 seconds left, so I want to briefly address, Your Honor, the questions that were asked about the RICO Enterprise. I think Judge Thomas, your question hit the nail on the head. They are alleging a RICO Enterprise based only on a routine business relationship between a platform and an advertiser. That cannot be a RICO Enterprise. They have to allege something more than that, and they haven't done that here. That was the basis for the district court's judgment with respect to Procter & Gamble. That would also be an alternative grounds to affirm with respect to the MEDA and ex-defendants. Without an allegation of that, there's simply no way the RICO claim can go forward. And then finally, with respect to Section 230, very briefly, I think my colleague, my friend said they're really challenging a content decision. That is what the district court found when it found that 230 would bar the claims, and that is why under 230c1 this claim can't go forward completely independent of the race judicata grounds, which themselves would be enough to affirm dismissal of the complaint. All right. She left you some change. Thank you, Your Honor, and may it please the Court. Jonathan Patchen on behalf of Twitter, now XCorp, and Jack Dorsey. I basically appreciate the extra time. I wanted to make sure to address any questions that the panel has with respect to Twitter specifically, but I also wanted to make three very brief points. The first of which is with respect to race judicata. To answer Judge Collins' question, the allegations that are made in this complaint or in the underlying complaint that was dismissed is that Ms. Loomer began her first run for Congress in 2019. Tellingly, the D.C. Circuit did not affirm and thus a final judgment for race judicata purposes or claim preclusion purposes until 2020. So the actual, even if there was a willingness to expand the notion of the claim from Ms. Loomer was banned, whether it was from Twitter, to this is an effect or some conspiracy to influence elections more broadly, that was still within the scope of what she could have pled and was within the scope thus of the final judgment in the first Freedom Watch, the Loomer 1 case. So to answer that question, it is absolutely within the scope of the transactional nucleus of facts with respect to Twitter because there is only one action that is challenged by Twitter and Mr. Dorsey in this complaint, and that was the 2018 ban of Ms. Loomer. And we know that that's the exact same claim she wants to bring here as she did in Freedom Watch, that first case in the D.C. District Court, then Circuit Court. Just compare the complaints. In the complaint that she filed in 2018, she alleged that, among other things, my client engaged in a conspiracy to intentionally and willfully suppress political conservative content. That is identical to the RICO enterprise conspiracy that she pleads in this complaint, which she says is, quote, a wide-ranging, illegal, and fraudulent conspiracy among big tech and other elements within corporate America to silence conservative voices and thus interfere with American elections. Is she currently banned from X or is she on X? No. She is back in 2022 for obvious reasons of different decision-makers and decision-making. She was allowed back on the platform. And that goes to the other question that you had, Judge Collins, which is when would you have a basis for a new claim? And in this scenario, right, if X decided now to ban her again for whatever reason, that new ban certainly could trigger the basis for a new lawsuit. But that contrasts that to a new lawsuit based on 2018 facts and 2018 ban. That's what is within the scope of ex judicata. The only other two points that I would make is that with respect to the three facts that are identified in the pleadings as to the job-owning, the Hunter Biden laptop, and the banning of Alex Berenson, none of those have any tangential relationship to the relationship and claims that Ms. Loomer brings here. That there are new facts about what Twitter might have done does not create a new claim. And we know that, and this is my final point, is if you read the reply brief, there is basically no answer to any of Twitter's arguments in its brief in the reply brief. It focuses entirely on meta and says nothing about Twitter's claims. Unless the panel has other questions. Thank you, counsel. All right, Mr. Green, you've got a minute. So, Your Honors, what's your response to the argument that this was a 2018 permanent ban and, therefore, all this additional conduct post-judgment just has no causal relationship to the infliction of any injury that's separate and, therefore, it's all one bucket for race judicata purposes? So, you know, I think that it needs to be very clear that the previous suits were about Ms. Loomer as an individual and her individual account being banned. What this matter is about is her political accounts and that congressional platform that she was trying to establish that was banned. That's the suppression of political voices and the interference with election activity that we're alleging here. The prior matters were all about her individual account, not her political account. So she had a platform that was created for her political campaign that was being banned here. That's the suppression of voices, not the original matter, which was just her as an individual. Thank you, Your Honors. Thank you. All right, this matter is submitted. Thank you both for your briefing and your argument, and we are adjourned. All rise. Thank you.
judges: THOMAS, OWENS, COLLINS